```
 1              UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT
 2

 3   _____ )
     JOHN FINNIMORE,                 ) No. 3:22-cv-01563-SRU
 4                                   )
                      Plaintiff,     ) June 14, 2023
 5   v.                              )
                                     ) 10:04 a.m.
 6   EDWARD LENNON, ET AL.,          )
                                     ) 915 Lafayette Boulevard
 7                    Defendants.    ) Bridgeport, Connecticut
     _____ )
 8

 9                     MOTION HEARING

10   B E F O R E:

11         THE HONORABLE STEFAN R. UNDERHILL, U.S.D.J.

12

13   A P P E A R A N C E S:

     FOR THE PLAINTIFF:
14
           JAMES S. BREWER, ATTORNEY AT LAW
15              9 Steele Boulevard, Suite 3
                Berlin, CT 06037
16              (860) 217-0652
                E-mail:  Jbreweratty@gmail.com
17         BY:  JAMES S. BREWER, ESQ.

18
     FOR THE DEFENDANTS LENNON, TRACY, EMERMAN AND TOWN OF
19   EAST HAVEN:

20         LAW OFFICE OF IAN E. BJORKMAN, LLC
                900 Chapel Street, Suite 621
21              New Haven, CT 06510
                203-773-9110
22              E-mail:  Ian@ibjorkman.com
           BY:  IAN E. BJORKMAN, ESQ.
23
     (Continued.)
24
                     Official Court Reporter:
25                   Melissa J. Cianciullo, RDR, CRR, CRC
                     (203) 606-1794
```

```
 1   A P P E A R A N C E S   C O N T ' D:

 2        RYAN & RYAN
               900 Chapel Street, Suite 621
 3             New Haven, CT 06510
               (203) 752-9794
 4             E-mail:  David.ryan@ryan-ryan.net
          BY:  DAVID A. RYAN, JR., ESQ.

 5

 6   FOR THE DEFENDANTS LENNON, TRACY, EMERMAN, BALLETTO,
     ROMANS, SILVESTRO, CARBO, BARBUITO, TOWN OF EAST
 7   HAVEN AND BOARD OF POLICE COMMISSION:

 8        MILANO & WANAT LLC
               471 E. Main Street
 9             Branford, CT 06405
               (203) 315-7000
10             E-mail:  Jkennedy@mwllc.us
          BY:  JEFFREY W. KENNEDY, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    (Call to Order, 10:04 a.m.)

 2              THE COURT:  Good morning.  We're here in the

 3    matter of Finnimore v. Lennon.

 4              Could I have appearances, please.

 5              MR. BREWER:  James Brewer for the plaintiff

 6    John Finnimore, your Honor.

 7              THE COURT:  Thank you.

 8              MR. BJORKMAN:  Ian Bjorkman, and with me is

 9    David Ryan and we represent the Town of East Haven

10    defendants Lennon, Tracy and Emerman.  Easy for me to

11    say, Judge.

12              MR. KENNEDY:  Good morning, your Honor.  Jeff

13    Kennedy from Milano Wanat.  I represent the

14    defendants Paul Carbo, Dominic Balletto, Diane

15    Romans, Joseph Silvestro, Barbara Barbuito and the

16    Town of East Haven Board of Police Commissioners.

17              THE COURT:  All right.  Thank you.

18              Well, we have a complex complaint and complex

19    motions to dismiss.  I'm happy to hear argument in

20    whatever order you want to go in.

21              It may make sense to take up initially the

22    motion to amend and to add a party, and maybe I'll

23    try to short-circuit that one.

24              It's my expectation that some of the claims

25    are going to survive the motions to dismiss; and,
```

```
1    therefore, I think it's not necessary to amend the
2    complaint at this point.  There is going to be some
3    claims that are dismissed without prejudice; and,
4    therefore, I expect an amended complaint will be
5    filed in due course.  And obviously the defendants
6    will have an opportunity to move against that
7    complaint when it's filed, but I think there is no
8    need to take up that aspect.
9         I'm happy to hear you on the aspect of that
10   motion to add a party defendant; and my inclination
11   is to think that as things currently stand, there is
12   no cognizable claim that could be raised against
13   counsel.  So I'm happy -- if you want to take that
14   up, I'm happy to hear from you.  But the sense I have
15   is that there is not a connection to the
16   constitutional claims that have been made.
17        MR. BREWER:  Yes, your Honor.  I'll just
18   speak briefly on it, Judge.
19        The defendants' response to that was that,
20   you know, Attorney Ryan had nothing to do with the
21   retaliation claims under the First Amendment.  And as
22   I pointed out in my reply brief, it's a twofold
23   problem for us.  One is obviously he is a witness to
24   some degree regarding the Fourteenth Amendment, you
25   know, due process and equal protection claims.  You
```

1    know, the -- one of the claims in the complaint, and

2    I'm not sure how the Court is going to rule on

3    motions to dismiss, is that this plaintiff was not

4    allowed, was denied the opportunity to make a

5    complaint, which all others are in due course allowed

6    to make, to the human resources director regarding a

7    hostile work environment, a very serious complaint

8    given what was going on, in addition to that

9    complaint to the human resources director regarding

10   the -- what he believed to be a retaliatory

11   corruption process by both the police defendants and

12   the Board of Police Commissioners.

13           And so our reasoning was that at some point

14   -- and I made this clear and I added it as an

15   exhibit.  I think Attorney Ryan is going to be a

16   witness, at least as far as that aspect.  He

17   interjected himself telling my client that he was

18   going to stand in the place of the human resources

19   director and hear his complaint regarding a hostile

20   work environment.  And, you know, we take issue with

21   that, obviously, Judge, because that's not his job.

22   His job, obviously, is to counsel.  And so that's the

23   crux of our argument.

24           THE COURT:  But how does that state a claim?

25           MR. BREWER:  He's -- the plaintiff is -- he

```
1   should be afforded a process to make a complaint.
2   When you take into consideration the conduct, the
3   hostility, the overt hostility displayed by Attorney
4   Ryan to John Finnimore when he came, you know, a
5   sergeant in the police department.
6        When you take that in conjunction with the
7   order which is stated in the complaint from Chief
8   Lennon, you know, a previous order from Chief Lennon
9   based upon, I suppose, advice from counsel, from the
10  town attorney, not Attorney Ryan but Attorney Luzzi,
11  that you will not go to human resources to make a
12  complaint, that's one of our claims, your Honor.  He
13  has a due process right to make a claim.
14       THE COURT:  Right.  And you've brought that
15  claim against the existing defendants.
16       MR. BREWER:  Yes.
17       THE COURT:  I just don't see how Ryan --
18       MR. BREWER:  You know, Judge, I'm not here to
19  drag him into it.  I hesitated when we filed the
20  complaint, you know, and I've made that point very
21  clear.  But I do think he's a witness.
22       THE COURT:  Well, that's an issue for another
23  day.
24       MR. BREWER:  Right.
25       THE COURT:  But yes.  I just don't see how,
```

1  at least in what you've set forth so far, there is

2  really a valid --

3          MR. BREWER:  It's early on, as you pointed

4  out, Judge.  We've conducted really no discovery.

5  We've had initial disclosures.

6          THE COURT:  Yeah.  As is always true, if you

7  get into discovery and you realize that, oh, we

8  missed a defendant here, I mean, you may have statute

9  of limitations problems but I just don't see it right

10  now.

11          MR. BREWER:  Okay.

12          THE COURT:  So I'm going to not permit you to

13  add Ryan at this point.  Obviously that's without

14  prejudice.  If you develop information that gives

15  rise to a cognizable claim, I just don't think there

16  is enough there yet.

17          MR. BREWER:  Judge, while we have you, am I

18  allowed to depose him?  I mean, this is a little new

19  for me.  I mean, he's counsel for the defendants.  Am

20  I allowed to notice him for a deposition?

21          THE COURT:  Well, I don't -- I mean, I'm sure

22  I'll hear if there is an objection.

23          MR. BREWER:  Okay.

24          THE COURT:  But discovery is broad.  People

25  are allowed to depose who they think is going to

```
 1   provide information that might be relevant.

 2   Obviously whenever you take a deposition of a lawyer,

 3   it becomes very complicated.

 4           MR. BREWER:  Right.

 5           THE COURT:  And difficult.

 6           MR. BREWER:  Thank you, your Honor.

 7           THE COURT:  Again, I don't think I need to

 8   rule on that today.

 9           MR. BREWER:  Okay.  Thank you.

10           THE COURT:  So I think that disposes of that

11   motion.

12           So let's take up the motions to dismiss.  I

13   don't know who wants to go first.

14           One thought I had is that it may make sense

15   to kind of parse out kind of issue by issue.  So

16   instead of having a --

17           MR. BJORKMAN:  Right.

18           THE COURT:  -- long argument and then have an

19   opportunity to address that, if we go -- I mean,

20   paragraph 26 seems to be the crux of things.  And if

21   we go subparagraph by subparagraph, that might be --

22           MR. BJORKMAN:  Right.  Thank you, your Honor.

23   That's really where I was heading, and I was going to

24   preface that by saying that we obviously have

25   arguments that none of this is protected speech, but
```

```
1    I think the better way to go at it is really in terms
2    of causation.
3         And the first adverse event that's claimed is
4    in September 2019 when the plaintiff was not promoted
5    to sergeant, and that's at paragraph 29.  And if we
6    go back to paragraph 26, really the first six
7    allegations are not in any proximity to the 2019
8    date.  And it's clear from plaintiff's reply papers
9    that they're only relying on temporal proximity.
10   Page 19 of their brief, they say they have no direct
11   evidence of retaliation so they're relying simply on
12   the fact that they're close in time.
13        And your Honor has written in Clark v.
14   Boughton fairly recently that when there is no direct
15   evidence of retaliation, the temporal proximity has
16   to be very close in time.  And Second Circuit has
17   talked about three months.  There is cases six
18   months, eight months.
19        But the first six allegations in paragraph
20   26, the first one is simply that he was a friend of
21   someone who was involved in the corruption probe.  In
22   2011, he testified before a grand jury, although it's
23   unclear who, if anyone, knew that at the time.  In
24   2014, he had a telephone call about a sergeant using
25   drugs.  In 2014, again, he was dispatched to the
```

```
1    police commissioner's rental property on an eviction.

2    And then in 2017, he reported he observed someone

3    drinking alcohol, shots of alcohol.  And in 2017, he

4    responded to one of the commissioner's houses and

5    arrested the commissioner's wife in 2017.

6             So those are really the first six allegations

7    in paragraph 26 and --

8             THE COURT:  So let me just have Mr. Brewer

9    clarify whether those are intended to be background

10   or intended to be the basis for a cause of action.

11            MR. BREWER:  It's background to a degree,

12   Judge.  It's a continuation of events that led up to

13   his being a candidate for promotion, you know, at

14   first a sergeant.  And we don't agree that it's

15   necessarily just a temporal causation.  I mean, there

16   was actual -- in -- when he went for the lieutenant

17   board, he was actually confronted during the

18   interview process for promotion about his previous

19   complaints.  I don't have the exact narrative, Judge,

20   but -- about those previous complaints.  And that's

21   well pled in our complaint, that these police

22   commissioners brought that up in the same room as the

23   defendants Lennon and Tracy the chief, I guess deputy

24   chief.  And so --

25            THE COURT:  Where is that in the claim?
```

```
1          MR. BREWER:  I think it was 29 -- actually,
2   you know, 28(e).  I'm sorry.  You know, Judge, I've
3   got my proposed amended complaint, so I think the
4   numbering is off.  It is --
5          THE COURT:  Presumably it's 29.
6          MR. BREWER:  29.  And then in (e)E, on
7   September 15, 2022 --
8          THE COURT:  Well, that talks about being
9   harassed about his pending complaint, not about past
10  complaints.
11         MR. BREWER:  I believe there was more, Judge,
12  but it was just a pleading issue when I put down
13  "harassed."  He was questioned extensively about his
14  conduct as a complainer.
15         THE COURT:  Well, okay.  But it looks like
16  it's not in the current complaint.
17         MR. BREWER:  I agree.
18         THE COURT:  Okay.
19         MR. BREWER:  I also, you know, with regarding
20  to one of the officers which Attorney Bjorkman
21  correctly pointed out, drinking with somebody is not
22  a crime but it is at least inappropriate, a minor,
23  and I didn't put "minor."
24         THE COURT:  That's, again, in your brief but
25  not in your complaint.
```

1          MR. BREWER:  Right.

2          THE COURT:  Yeah.  Okay.  But I think

3    Mr. Bjorkman's point is there does not appear to be

4    temporal -- a temporal connection between these first

5    six.

6          MR. BREWER:  I agree, Judge.  It's -- you can

7    -- he calls it flavor or I think somebody called it

8    flavor.  It's background.  It's certainly, I think,

9    relevant in the totality of the circumstances because

10   this is somebody that scored number one on all these

11   examinations.  There is no legitimate reason not to

12   promote him.  This information was brought up again

13   at the promotion proceedings, and then when he was

14   understandably upset about it, he's punished.  And so

15   it sort of all comes together.  That's why we put the

16   fact that he was a confidant, that he testified in

17   the grand jury regarding corruption in East Haven

18   Police Department, that he was a friend of Vincent

19   Ferrara's.  These people don't forget that, Judge.

20          And some of the case law, I don't have it,

21   I'm not a good case off the top of my head person,

22   but we briefed it.  A lot of the case law talks about

23   it doesn't have to be a direct line, it doesn't have

24   to be a direct timing.  Sometimes there is a little

25   bit of a lapse before the retaliation can be meted

1    out, and that's I think why we put that in there.

2            THE COURT:  Yeah.  Well, some of it's eight

3    years so . . .

4            MR. BREWER:  It's not a long time for some

5    people, Judge.  Vengeance has no time limit.

6            THE COURT:  Yeah.  But I think when you --

7            MR. BREWER:  Actually, it's not -- I mean,

8    the -- I did the *Ferrara* case, as you may not know,

9    Judge.  But that was only about four years ago that

10   that all brewed up again.  So there is a lot of

11   wounds that resulted from that whole litigation.

12           THE COURT:  Okay.  But the point is in terms

13   of causation, there isn't enough here in the current

14   complaint for -- to give a connection, a causal

15   connection for --

16           MR. BREWER:  For those.

17           THE COURT:  -- for those first sections.

18           MR. BREWER:  I agree, yes.

19           THE COURT:  Okay.

20           MR. BJORKMAN:  Your Honor, on that point, it

21   would certainly be helpful if, as you indicated, some

22   of the claims survive, that if these allegations

23   survive -- not survive but if those -- well, the

24   allegations survive, that they be made clear that

25   those aren't allegations we need to defend against in

1    terms of the substantive count.  So if it gets put

2    back in for background, it doesn't reappear at a

3    trial as something we're defending and taking

4    discovery on and that sort of thing.

5          THE COURT:  Well, I think that's fair.  I

6    think, you know, when getting to the basis of the

7    count, there may need to be some more specificity

8    about what speech is at issue and what consequences

9    follow from that speech.

10          MR. BJORKMAN:  So, your Honor, the first

11   allegation was allegation G that has any temporal

12   proximity.  That's where he describes on September

13   25, 2019, which was five days before he alleged he

14   was not promoted to sergeant, it's very confusing to

15   me, your Honor, really what he's claiming.  But he's

16   claiming that an officer admitted to him that he --

17   that this officer stole things from his ex-wife's

18   house, including a dog, and that somehow the North

19   Branford Police Department buried that and that

20   complaint was made to the chief and the chief ignored

21   it.  And apparently he's claiming that he reported

22   this to all three of the individuals I represent and

23   the entire board of commissioners, whether or not

24   they were currently on the board at that point.

25          And, your Honor, that really -- first of all,

1    it's unclear to me what speech is being made that he

2    could possibly be retaliated against for, that he

3    told someone that -- what the officer said to him or

4    that he was reporting to his chief about what the

5    North Branford folks were doing.  It's really unclear

6    to me what that is.

7           And I think in terms of *Iqbal*, whether that

8    really states a plausible claim that somehow he

9    reported this to -- and that that was a foundation

10   for retaliation, but even if it was, even if you can

11   get over *Iqbal* on that, your Honor, is that -- we

12   would maintain that's not protected speech.  I mean,

13   that's an issue that we would say is a matter of

14   public concern.

15           THE COURT:  Is it police malfeasance?

16           MR. BJORKMAN:  Well, what's the malfeasance

17   here, Judge?  That --

18           THE COURT:  Well, it sounds like a breaking

19   and entering of his ex-wife.  It sounds like a theft

20   of some whatever the items are and a dog.

21           MR. BJORKMAN:  He wasn't arrested, your

22   Honor.

23           THE COURT:  Well, he was --

24           MR. BJORKMAN:  Certainly Sergeant Finnimore

25   could have arrested him.

1          THE COURT:  Well, it doesn't make it illegal

2     that he wasn't arrested.

3          MR. BJORKMAN:  I agree with that, your Honor.

4     But it gets to the point of both whether it's a

5     matter of public concern, and it is -- the Second

6     Circuit has been clear that police malfeasance is

7     generally a matter of public concern but not every

8     internal spat is a matter of public concern.

9          THE COURT:  Well, sure.  But what the

10    allegation is is that this, meaning everything above

11    the last sentence in G, was reported to the

12    defendants.  Now, that's a fairly conclusory

13    statement.  But I think I have to look at this as

14    suggesting that the defendants were told about

15    illegal activity by a fellow officer and did nothing

16    about it.

17         MR. BJORKMAN:  Well, I think the second point

18    would be whether or not he did that as a citizen or

19    as part of his job.  And, you know, we would

20    obviously maintain that if --

21         THE COURT:  Well, was he in the internal

22    affairs division?  Was he looking into problematic

23    behavior by fellow officers --

24         MR. BJORKMAN:  It's not --

25         THE COURT:  -- or was he just a line officer,

1   if you will?

2          MR. BJORKMAN:  It's not alleged that he was

3   in the internal affairs, and I don't have any

4   independent knowledge of that so . . .

5          THE COURT:  Right.  So if he were in internal

6   affairs, it would have been his job to report or to

7   follow up in some way on alleged malfeasance.  But

8   because he wasn't -- how does this fall within his

9   job duties?

10         MR. BJORKMAN:  Well, just like in the case

11  that I cite, I mean, if you find -- every time you

12  report a crime is not necessarily in the public

13  interest.  It could just be doing your job if you see

14  someone who is your brother police officer doing

15  something wrong.  Is it if you're not acting as a

16  citizen, you can just remain silent and do your job?

17         THE COURT:  But so if a nonpolice officer

18  citizen was aware of these facts and reported them,

19  that's --

20         MR. BJORKMAN:  It would likely -- well, I

21  guess you would have to make the distinction it was a

22  matter of public concern.  But right, if a public

23  person, citizen reported it, it would likely be a

24  matter of public concern reported by a citizen.

25         THE COURT:  Right.

```
1         MR. BJORKMAN:  But our distinction is between

2    things that -- reports that a citizen does make and

3    someone makes within their job.  That's what we're

4    trying to --

5         THE COURT:  Well, okay.  But do you have job

6    duties for Finnimore in September of 2019 that

7    including reporting a fellow officer's illegal

8    conduct?

9         MR. BJORKMAN:  Not on a motion to dismiss,

10   your Honor.

11        THE COURT:  Yeah.  That's the thing, yeah.

12        MR. BJORKMAN:  The next point is and the

13   second point is about him reporting Murgo's, another

14   officer's, purchase in uniform of illegal steroids

15   which were ignored, and I think we'd have the same

16   colloquy about that.

17        THE COURT:  It's probably the same issue.

18        MR. BJORKMAN:  Right.  If I'm understanding

19   your Honor that these are two allegations that may

20   well survive, as I said before, it would certainly be

21   instructive and helpful to the defendants and I think

22   the case to understand that those are the two claims

23   that we're defending against and so that be pleaded

24   clearly and to understand which of the adverse

25   effects were supposed -- those are related to.  So,
```

```
1    for example, the September 25, 2019, is in close

2    temporal proximity to not being promoted to sergeant.

3    I'm not aware of any case law where that --

4         THE COURT:  Which one is not closely related?

5         MR. BJORKMAN:  That is.  The September 25,

6    2019, is related to the sergeant.

7         THE COURT:  Right.  Four days.  I think

8    that's --

9         MR. BJORKMAN:  Right.  That's certainly

10   close, your Honor.  What I'm trying to say is are we

11   to understand and defend against the case where that

12   retaliation continued for all of these things?  Are

13   we defending that that simple report was a motivating

14   factor and a causal relationship in all the other

15   things that happened to him and the same thing with

16   the steroids?  Those are the only two speech items

17   that we're aware of, and there is a litany of things

18   that -- and there is things that happened after.  So,

19   for example, he wasn't promoted to lieutenant in

20   2022.  We don't know when in 2021 he spoke out about

21   Murgo's purchase.  So it may well have been after

22   these things happened.

23        THE COURT:  There should be more detail on

24   that allegation, specifically the date.

25        MR. BJORKMAN:  The other point we'd like to
```

```
1    make, your Honor, is there is a general allegation
2    that his union activity is also a motivating
3    retaliation and --
4             THE COURT:  I don't think there is a legal
5    basis for that claim.
6             MR. BJORKMAN:  Your Honor, going to Count 2,
7    the Fourteenth Amendment count.
8             THE COURT:  Yes.
9             MR. BJORKMAN:  Procedural due process, our
10   first point is that he -- his main complaints are not
11   being promoted or getting seniority, and he hasn't
12   alleged that there is -- he has a property interest
13   in being promoted.  He hasn't alleged that he had the
14   right to get that promotion based on the score from
15   the town charter or the CBA or anything like that.
16   He just thinks he deserves it, which is fair for him
17   to think that but it's not a constitutionally
18   protected property interest such that it would --
19             THE COURT:  What, if anything, does the
20   Collective Bargaining Agreement say about the process
21   and the -- is there a provision in there that talks
22   about if you score a top score, you will be -- I
23   mean, there are some cases that basically say if
24   you're given assurances that you will be promoted,
25   that's sufficient.  Here, I don't have the Collective
```

1    Bargaining Agreement so . . .

2          MR. BJORKMAN:  Right.  And it's not alleged.

3    We didn't submit it.  We can submit it.  The answer

4    to that is no, your Honor.  If he had that -- if

5    there was something in the Collective Bargaining

6    Agreement, I'm sure we would be in a grievance

7    instead of federal court.  He would have the right to

8    grieve that, and if it were true that he was entitled

9    to that, he would have come to that.

10          THE COURT:  This is maybe slightly unrelated.

11   What does state law say about post-depravation

12   procedure?  Is there some state-created procedure

13   that should be followed?  Is that a matter for the

14   Collective Bargaining Agreement?  I'm not -- I just

15   don't know.

16          MR. BJORKMAN:  Right.  So we would say with

17   regard to the promotion, there is no post-depravation

18   because he hasn't been deprived of a property

19   interest.

20          But certainly in terms of his complaint about

21   the suspension, for example, right, so he was given a

22   Loudermill hearing under federal law in the Supreme

23   Court case.  So he was given that.  The discipline

24   continued and he was -- he had the opportunity to

25   grieve it, which he did, your Honor, and the

1   grievance went through the steps of the CBA and it

2   went up to the state board of mediation and

3   arbitration, and the grievance was withdrawn.  So --

4         THE COURT:  Okay.  So the state board, is

5   that avenue available because of some state statute,

6   or is that through the Collective Bargaining

7   Agreement that you have a right, if you grieve it,

8   you can go off to the state.

9         MR. BJORKMAN:  It's both, your Honor.  So the

10  Collective Bargaining Agreement is --

11        MR. RYAN:  Your Honor, it's purely -- it's

12  Attorney Ryan speaking on this issue since I

13  negotiated that contract.

14        It's a creature of contract.  The parties

15  could have agreed, for instance, to go to AAA,

16  American Arbitration Association, or another

17  arbitrator or a mediation first and then arbitration.

18  But it's a creature of contract.

19        And your prior question, the contract and/or

20  the general orders or both call for what's known

21  commonly as the rule of three, so the top three

22  scores.

23        THE COURT:  That's what I've encountered in

24  the past is the three and then there is some

25  discretion about which one is picked.

```
1           MR. RYAN:  I believe it's complete discretion

2     in this situation.

3           THE COURT:  All right.  So maybe -- I don't

4     want to interrupt you.

5           MR. BJORKMAN:  No.  I'm happy to be

6     interrupted, your Honor.

7           THE COURT:  Okay.  Maybe I should hear from

8     Mr. Brewer on these claims.

9           MR. BREWER:  Your Honor, the Fourteenth

10    Amendment claim is based on a deprivation not only

11    regarding the promotion but also regarding the

12    suspension because the suspension was a little

13    obtuse, I guess is a nice way to put it, where

14    Attorney Donofrio comes in in lieu of Chief Lennon,

15    who is appropriately the disciplinarian but obviously

16    as the complainant and the witness, you know, they

17    decided to bring in Attorney Donofrio.  That in and

18    of itself doesn't create too much of a problem.

19          But Attorney Donofrio's determination does

20    not even indicate any violation of any specific

21    conduct.  There is just a gap there.  And then it's

22    picked up by Chief Lennon who makes, in his -- this

23    is obviously all subject to more discovery, Judge,

24    but who makes a determination that, yes, you did

25    violate it, and I'm going to take the recommendation,
```

```
1   which Attorney Donofrio made, but I'm going to take
2   his recommendation of three to five days' suspension
3   without pay and I'm going to suspend you for five
4   days.
5           And so there is no process here because we
6   don't even have a determination by the supposed
7   objective, which we contest as well, attorney they
8   brought in to decide this very unusual complaint from
9   a chief and a deputy chief against one of their
10  promotional candidates.
11          Regarding --
12          THE COURT:  Well, why isn't -- why aren't
13  those concerns resolved by the post-deprivation
14  procedures?  You grieved it and then I hear that
15  you've withdrawn the grievance.
16          MR. BREWER:  Right.  We withdrew the
17  grievance.  What happened is the union learned that
18  Attorney Ryan wanted to cross-examine our client
19  during the grievance proceeding.  We made a tactical
20  decision not to expose him to that because we,
21  frankly, don't -- you know, we're not clear on what
22  the playing field would be, what questions could be
23  asked, et cetera, regarding the arbitration.
24          But the process for the promotion board, I
25  believe it would -- I've seen in other instances is
```

```
1    that you go to the human resources avenue which was

2    prevented in this case, right?  I mean, he went to

3    make a complaint about that, that's very clear in our

4    complaint, to the human resources director and was

5    first ordered by Chief Lennon not to go.  And then

6    subsequently when he did finally, this is months

7    later, meet with Ms. Benivegna, Attorney Ryan is

8    there telling him, I'm going to be hearing your

9    complaint of a hostile work environment and the

10   denial of promotion.  And so I don't know what

11   process, you know, the -- I don't know what grievance

12   process at this point would be available when you're

13   denied promotion.

14          And we also don't know, and this is subject

15   to amendment, whether on the rule of three, whether

16   or not the plaintiff -- and that's on me, whether or

17   not the plaintiff or the defendants violated even

18   that provision.  But clearly he's number one on the

19   list for sergeant and for lieutenant and passed over

20   numerous times at different times.

21          THE COURT:  Okay.

22          MR. BREWER:  They've never asserted a

23   legitimate reason for not promoting him.

24          THE COURT:  Right.  But if he has no right to

25   promotion under the Collective Bargaining Agreement,
```

```
 1   isn't the top three how they make their call?
 2          MR. BREWER:  I'm not --
 3          THE COURT:  Look, I understand why you think
 4   it stinks.
 5          MR. BREWER:  I think the Constitution trumps
 6   the Collective Bargaining Agreement, Judge.  If
 7   they're doing that because they're retaliating
 8   against him, I think that that -- one of my first
 9   cases was on that same score, promotion to sergeant,
10   it was denied because of the top --
11          THE COURT:  Okay.  Well, now you're falling
12   back on the retaliation.  So I'm trying to sort out
13   the procedural due process issue and it doesn't look
14   like there is --
15          MR. BREWER:  I agree.  On that basis, you're
16   probably right, Judge.
17          THE COURT:  There is no probably right in the
18   promotion apparently.  I mean, if you have
19   something --
20          MR. BREWER:  I will look.  I'll take Attorney
21   Ryan's word for it, obviously.
22          THE COURT:  So and then on the suspension, is
23   this a situation where any complaints you have about
24   the procedural irregularities could be cured by going
25   to a post-depravation grievance procedure?  Who does
```

1    the grievance procedure go to?

2        MR. BREWER:  I think we need more discovery.

3    I think we need discovery on it because I've read the

4    documents as much as I could get.  We've obviously

5    conducted no interviews, no depositions or, you know,

6    documents from the union per se.  But the ones that I

7    read indicated that they were not -- you know, they

8    contested it but they never -- I think they might

9    have tried to file something but I never saw

10   anything.  So it was as though he was roadblocked

11   because of that lack of process regarding -- this was

12   regarding the Attorney Donofrio sitting in place of

13   Chief Lennon, that they found that to be improper.

14       THE COURT:  Who found that?

15       MR. BREWER:  The union.  They indicated that

16   but I don't think they did anything about it.

17       THE COURT:  Well, okay.  I'm trying to figure

18   out, assuming that was improper, didn't Finnimore

19   have a chance to take it to the next level?  And if

20   so, how does a procedural due process claim, how can

21   it be stated if there is a post-depravation?

22       MR. BREWER:  I've dealt with this issue on

23   other police cases that I've done, and I think we

24   need to know more before the Court can know really

25   whether or not it might be subject to summary

```
1    judgment because it's a fact issue of what is
2    available and we have not yet pinned down.  I mean, I
3    don't think he has.  And there is also issues of
4    whether or not he was not adequately -- it was not
5    adequately pursued by the union.  So there is some
6    factual --
7              THE COURT:  Well, these defendants aren't --
8              MR. BREWER:  No.  But that could be a basis,
9    your Honor, for allowing for a procedural due process
10   claim, if he has no remedy because the union refuses
11   to bring that.  He can't bring a grievance without
12   the union if the union refuses to bring it.  And I've
13   seen that before.  It comes down to a lot of factual
14   determinations.
15             THE COURT:  All right.  You sense my --
16             MR. BREWER:  I see where you're going, Judge.
17             THE COURT:  You sense my --
18             MR. BREWER:  Yeah.
19             THE COURT:  -- view of this claim as it now
20   stands.  You know, as I said before, you'll have a
21   chance to replead.  But I think this is a difficult
22   one for you to --
23             MR. BREWER:  Right, I agree.
24             MR. BJORKMAN:  Your Honor, it sounds like you
25   don't need any argument on the equal protection
```

```
 1   aspect of that claim?

 2         THE COURT:  Well --

 3         MR. BJORKMAN:  Briefly --

 4         THE COURT:  -- equal protection may be

 5   stronger than procedural due process, frankly.  At

 6   least implicitly there are comparators.  Here I

 7   forget the officer's name, but there was somebody who

 8   was promoted despite a disciplinary issue and this

 9   guy wasn't.  And, you know, that may, at least at

10   this stage, be enough.

11         MR. BJORKMAN:  Right.  I would just add that

12   there is two courts in this district that found that

13   Engquist also precludes a selective enforcement equal

14   protection as well as a class of one equal

15   protection.  So I think the class of one equal

16   protection is precluded.  The selective enforcement,

17   your Honor, our argument is that there is no

18   comparator for selective enforcement.  Your Honor is

19   indicating, well, maybe there is, but a couple of

20   courts have found that Engquist also applies to

21   selective enforcement on equal protection.

22         THE COURT:  Well, isn't that issue affected

23   by the claimed malice in this case?  In other words,

24   disparate treatment plus malice states an equal

25   protection claim.
```

1      MR. BJORKMAN:  For a public employee, your

2  Honor, as I understand *Engquist,* it says that it's a

3  -- the class of one, at least, is precluded for a

4  public employee.  I may have misunderstood that case

5  but . . .

6      THE COURT:  Mr. Brewer, do you want to weigh

7  in on this?

8      MR. BREWER:  Your Honor, we cited *Hu,* I

9  guess, H-u, v. *City of New York* on page 25 of our

10  memorandum, and I think that might be applicable

11  where -- you know, and this is obviously very

12  complex, as you pointed out when we first started,

13  and it's gone back and forth a little bit within the

14  district and I believe the circuit.  But the *Hu* case,

15  it just came up recently in another case I had with

16  Judge Arterton, tried to flush this out.  And, you

17  know, when there is a constitutionally protected

18  activity, which of course we have an allegation of

19  that in here, and malice, *Hu* would say that it

20  survives.  But I think that -- I know I'm sounding

21  like a broken record, but I think it needs to be

22  explored a little bit more factually as to what

23  happened, you know, in this case.  But the --

24      THE COURT:  Well, okay.  As a first step, I

25  think you ought to replead this with more detail.

1          MR. BREWER:  Okay, yes.

2          THE COURT:  You know, it's fairly bare bones,

3    and I think -- obviously, I think we'll have --

4          MR. BREWER:  I agree with you, Judge.

5          THE COURT:  -- another motion, and at that

6    point we may have the best complaint you can bring.

7          MR. BREWER:  Right.  We'll make it more

8    specific.

9          THE COURT:  All right.

10         MR. BJORKMAN:  And, finally, your Honor, with

11   regard to Count 3, we just see that as a catchall

12   against the town.  So if Counts 1 and 2, if parts of

13   that fail, they all fail against the town.  We

14   haven't made a Monell argument at this point because

15   our position is that those underlying counts fail.

16         THE COURT:  Right.  Again, I think we should

17   allow Mr. Brewer to plead his best complaint and

18   we'll see what there is.  You know, obviously final

19   policymakers can be individual.  There is various --

20   there are a number of defendants here who arguably

21   might be final policymakers.  So I think we'll await

22   the next edition of the complaint, and then we'll

23   probably have the need to more substantively take

24   that up.

25         MR. BJORKMAN:  Thank you, your Honor.

```
1              THE COURT:  Sure.

2              MR. KENNEDY:  Hi, your Honor.  Can I be heard

3    for one moment?

4              THE COURT:  Of course.

5              MR. KENNEDY:  I represent -- one of my

6    clients is the East Haven Board of Police

7    Commissioners.

8              I believe from Attorney Brewer's response,

9    they can be -- they're properly dismissed from this

10   action, your Honor?

11             MR. BREWER:  The police commission.

12             MR. KENNEDY:  The police commissions.

13             MR. BREWER:  Yeah, I think I conceded that,

14   your Honor.

15             THE COURT:  The commission itself.

16             MR. BREWER:  As an entity, yes.  Right.

17             THE COURT:  Yes.  It's not an entity that can

18   be sued, of course, yes.

19             MR. KENNEDY:  That's all, your Honor.

20             THE COURT:  What about -- do you represent

21   Emerman?

22             MR. KENNEDY:  I do not, your Honor.

23             MR. BJORKMAN:  I do, your Honor.  I

24   apologize.  I should have raised that.  I apologize.

25             THE COURT:  Yeah.
```

```
 1          MR. BJORKMAN:  We don't see any personal
 2   involvement of Emerman other than that one paragraph
 3   where supposedly he made a false complaint.  That's
 4   not linked to any of the retaliation events.  Clearly
 5   it's not the plaintiff's speech, and it's not -- that
 6   report is not -- as I read the complaint, not in
 7   retaliation for any of his speech, so we don't see
 8   how that relates to the first count.  And Emerman has
 9   nothing to do with the substantive due process or
10   equal protection or . . .
11          THE COURT:  Yeah.  Let me hear from
12   Mr. Brewer on Emerman.
13          MR. BREWER:  Well, your Honor, at the outset,
14   personal involvement is a factual determination.  I
15   think the case law says that.
16          THE COURT:  Right.  But you have to allege
17   it.
18          MR. BREWER:  Right.  And the allegation that
19   he put in a complaint in furtherance of the
20   retaliation, right, in order to bolster the denial of
21   promotion, is essentially what that false complaint
22   in December of 2020 --
23          THE COURT:  Do you have the paragraph of the
24   complaint?
25          MR. BREWER:  I put it in my brief, Judge.
```

```
 1   It's --
 2          THE COURT:  It looks like maybe 36.
 3          MR. BREWER:  -- 36.
 4          THE COURT:  Is that the one?
 5          MR. BREWER:  Yes.  My numbering is off
 6   but . . .
 7          MR. BJORKMAN:  I think it's 38, your Honor.
 8          MR. BREWER:  Oh, 38, yeah.  I'm sorry, your
 9   Honor.  There is a couple paragraphs regarding
10   Captain Emerman.
11          THE COURT:  Yeah.  But how do any of the
12   allegations in the complaint relate to one or more of
13   your causes of action?
14          MR. BREWER:  Well, as I've mentioned, the
15   police commission looks at the record of the
16   candidates.  This is in the midst of being under
17   review for promotion, Emerman puts up this false
18   complaint in order to diminish plaintiff's chances.
19   That's essentially it, Judge.
20          THE COURT:  Okay.  Was that done in
21   retaliation for anything?
22          MR. BREWER:  We believe that that's the point
23   of it, that he's working in concert with them to deny
24   -- the retaliation is obviously part of it -- part of
25   it is the hostility, obviously, and malice.  It's a
```

1   difficult place to work.  But the adverse employment

2   action is the denial of promotion, so he worked in

3   furtherance of that, you know, to give them a

4   pretext, perhaps, to not promote the plaintiff.

5           THE COURT:  All right.  When you say "adverse

6   employment action," I'm thinking Title 7 here.  So

7   how is it a constitutional or Section 1983 claim

8   against Emerman?

9           MR. BREWER:  Because he worked to retaliate

10  against the plaintiff, right, by making a false

11  complaint of misconduct.

12          THE COURT:  But you don't connect that to

13  anything.  I mean, this is a bad act.  Okay?  We'll

14  just say it's a bad act.

15          MR. BREWER:  Right.

16          THE COURT:  But that's not enough to get you

17  a constitutional claim or a claim under 1983 for

18  violation of federal --

19          MR. BREWER:  I'm not going to die on my sword

20  for this one, your Honor.  It's not -- he's not

21  crucial.  He's a high-ranking, you know, person in

22  the department.  But I think the other police

23  defendants are more -- as you point out, more

24  apropos.

25          THE COURT:  Yeah.  So I'm going to dismiss

```
 1  him.  If you have -- you're going to have the
 2  opportunity to file another complaint.
 3          MR. BREWER:  Right.
 4          THE COURT:  And if I've got some connection
 5  that you can plead, I'll take a look at it.
 6          MR. BREWER:  I'll review it.  I appreciate
 7  it.
 8          THE COURT:  But it looks to me like it really
 9  is -- you're just saying this is a bad thing that
10  happened to my client and we've got this case going
11  so I'm going to throw it in there.
12          MR. BREWER:  I think -- well, like I said, it
13  wasn't that cavalier.  I think we really did -- and
14  based on very preliminary information from a client,
15  et cetera, Judge, but you know, that he acted in
16  concert.  I think there may be more.  But like I
17  said, I don't think he is crucial so . . .
18          THE COURT:  Okay.
19          MR. BREWER:  But thank you.
20          THE COURT:  All right.  So I was going to
21  issue a written ruling on this thing which would be,
22  you know, 75 pages and you could get it in six
23  months, and I don't think that serves anybody.
24          MR. BREWER:  I'm good with it, your Honor.
25          THE COURT:  Yeah.  I think in effect I'm
```

```
1   granting in part and denying in part without
2   prejudice as set forth on the record and we'll get
3   another complaint.  Does anybody have a problem with
4   that approach?
5          MR. BREWER:  None from the plaintiff, your
6   Honor.
7          MR. BJORKMAN:  No objection, your Honor.
8          MR. KENNEDY:  No, your Honor.
9          THE COURT:  And obviously a lot of these
10  issues are going to come back again, so you have a
11  preview of what you need to address in the complaint.
12  I think there are some good points that have been
13  made in terms of clarifying which speech you're
14  relying upon as a basis for the retaliatory claims
15  and which are just background, you know, stating more
16  completely the procedural issues, maybe adding more
17  expressly the equal protection theory so that we can
18  evaluate that.
19          But in short, I don't think it makes a lot of
20  sense for me to write on this when I know it's going
21  to come back and we can do a more thorough version
22  next time.  As a practical matter, you should feel
23  free to replead whatever you want to replead.  I
24  think I've given you some strong hints about what's
25  likely to survive and what isn't.
```

```
1          MR. BREWER:  I understand, your Honor.  As

2    far as timing, Judge, can you give a little bit

3    longer date for me to do that because I'm going away

4    in a few weeks from June to July.

5          THE COURT:  What would you propose?

6          MR. BREWER:  Pardon me?

7          THE COURT:  What would you propose?

8          MR. BREWER:  Probably end of July because I'm

9    gone until about July 12th, and then I've got a

10   summary judgment, you know, and a couple other cases.

11   I'll probably get it done before that but I don't

12   want to be . . .

13         THE COURT:  I have no great problem.  I don't

14   know if the defense has a concern.

15         MR. RYAN:  No objection, your Honor.

16         MR. KENNEDY:  Yeah, no objection.

17         THE COURT:  All right.  So the last weekday

18   in July.  I don't have a calendar in front of me

19   but . . .

20         MR. BREWER:  I'll figure it out.

21         THE COURT:  All right.  And do your best

22   because I think at the next motion, if claims are not

23   stating a claim, they'll be dismissed with prejudice.

24         MR. BREWER:  I'm going to keep it very

25   simple, Judge.  That's the best way to go.  Thank
```

```
 1   you.
 2          THE COURT:  All right.  Anything else we can
 3   usefully take up today?
 4          MR. BREWER:  Nothing from the plaintiff.
 5          MR. BJORKMAN:  No, your Honor.
 6          THE COURT:  All right.  Thank you all.  It's
 7   an interesting case.  Thank you.
 8          We'll stand in recess.
 9          (Proceedings adjourned, 10:53 a.m.)
10
11
12               C E R T I F I C A T E
13
14     RE: JOHN FINNIMORE v. EDWARD LENNON, ET AL.
                No. 3:22-cv-01563-SRU
15
16          I hereby certify that the within and
17   foregoing is a true and accurate transcript taken in
18   the aforementioned matter to the best of my skill and
19   ability.
20
21          /s/ Melissa J. Cianciullo_____
22     MELISSA J. CIANCIULLO, RDR, CRR, CRC
                Official Court Reporter
23          United States District Court
                915 Lafayette Boulevard
24            Bridgeport, CT 06604
                 (203) 606-1794
25
```