## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN FINNIMORE,<br>        Plaintiff, | No. 3:22-cv-1563 (SRU) |
| v. | |
| EDWARD LENNON, et al.,<br>        Defendants. | |

### ORDER ON MOTIONS TO DISMISS

The instant motions challenge the sufficiency of John Finnimore's amended civil rights complaint.  For the reasons that follow, I **deny** in substantial part the defendants' motions to dismiss, **docs. no. 43, 45,** and **grant** the motions to the extent that they apply to Finnimore's promotion complaints.

## I.      Background

### A.  Factual History

Plaintiff John Finnimore is a Police Sergeant for the Town of East Haven Police Department ("EHPD").  Am. Compl, Doc. No. 38 ¶ 6.  Defendants Paul Carbo, Dominic Balletto, Dianne Romans, Joseph DiSilvestro and Barbara Barbuito were members of the Town of East Haven Board of Police Commission ("BOPC") during the relevant period.  *Id.* ¶¶ 9-13. Defendant Edward Lennon was the EHPD's Chief of Police and defendant Patrick Tracy was the Deputy Chief of Police.  *Id.* ¶¶ 7-8.  Finnimore brings, *inter alia*, a First Amendment retaliation claim against those defendants.  *See generally id.*

Finnimore has been an EHPD officer since 2010.  *Id.* ¶ 15.  In 2011, he began to speak out about alleged misconduct within the EHPD.  *Id.* ¶ 23.  For instance, Finnimore testified before a federal grand jury regarding "the EHPD['s] corrupt practices," reported a lieutenant for

using drugs with a citizen, and reported a police commissioner for ordering Finnimore to

"illegitimately" enter the commissioner's rental property.  *Id.* ¶¶ 24a, 24c-24d.  He also reported

Detective Robert Brockett for drinking alcohol with a minor, illegally entering his ex-wife's

home to seize property, and for persuading another detective to drop an arrest warrant against

him.  *Id.* ¶¶ 24e, 26a-26b.[1]  Finnimore's complaints about officer misconduct continued until

2019.  *See id.* ¶¶ 26a-26b.[2]

Finnimore applied and interviewed for promotional opportunities within the EHPD.  *Id.*

¶¶ 26b,[3] 28b, 30e, 31a.  He interviewed twice for a sergeant position and twice for a lieutenant

position.  *Id.*  Before candidates are interviewed by the BOPC and the Chief of Police, they must

complete a written examination and an oral examination.  *Id.* ¶ 21.  The purpose of the

examinations is to rank the candidates for promotion eligibility.  *Id.* ¶¶ 26c-26d.[4]  The BOPC has

final say over which candidates are promoted.  Town of East Haven Charter, Ch. 1 § 7(A), (C).

Based on the results of his written and oral examinations, Finnimore ranked first on the

promotion list for all four interviews.  *Id.* ¶¶ 26d,[5] 28e, 30b, 31d.  Finnimore was not promoted.

The defendants instead promoted other EHPD officers with lower promotional list rankings.  *Id.*

¶¶ 26f, 28h, 30g, 31e.

Finnimore began to complain about the EHPD's "corrupt promotion process" after he

was first passed over for promotion in 2019.  *See id.* ¶ 27a.  During the promotional interviews,

Lennon and the BOPC members questioned Finnimore about both his misconduct complaints

and his "corrupt promotional process" complaints.  *Id.* ¶¶ 28g, 30f, 31b-31c.  The alleged

---

[1] The amended complaint contains two "26a" and "26b" paragraphs.  Here, I cite to the first 26a and 26b paragraphs.
[2] I cite to the amended complaint's first 26a and 26b paragraphs.
[3] I cite to the amended complaint's second 26b paragraph.
[4] The amended complaint contains two "26c" and "26d" paragraphs.  I cite to the second 26c and 26d paragraphs.
[5] I cite to the amended complaint's second 26d paragraph.

retaliation came to a head when Lennon and Deputy Chief Tracy initiated an internal investigation against Finnimore in 2022. *Id.* ¶ 33. After a hearing, the defendants imposed five days' suspension without pay for Finnimore's "insubordination" and "unbecoming" behavior. *Id.* ¶¶ 41-42 (cleaned up).

### B. Procedural History

On February 9, 2023, the defendants moved to dismiss Finnimore's original complaint. Docs. No. 15, 17. I held oral argument on the motions. Min. Entry, Doc. No. 33. I granted the motions in part, without prejudice, and denied the motions in part for reasons set forth on the record during the hearing. *Id.*; Mot. to Dismiss Hr'g Tr., Doc. No. 34 at 36:25-37:2.[6] I asked Finnimore to file an amended complaint with more detailed factual allegations. *See* Mot. to Dismiss Hr'g Tr., Doc. No. 34 at 19:23-19:24, 30:24-30:25, 37:2-37:3.

In his amended complaint, Finnimore re-alleges his First Amendment Retaliation claim, Fourteenth Amendment Equal Protection claim, *Monell* claim, and state whistleblower claim. *See generally* Am. Compl., Doc. No. 38.[7]    The defendants have now moved to dismiss the amended complaint. Docs. No. 43, 45. I held oral argument on July 30, 2024 and took the motions under advisement.

## II.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." *Ryder Energy Distribution Corp. v. Merrill Lynch*

---

[6] I granted the motion to dismiss as it applied to defendant Emerman, without prejudice, because Finnimore did not sufficiently connect Emerman to the alleged constitutional violations. Mot. to Dismiss Hr'g Tr., Doc. No. 34 at 34:11-36:5. Finnimore did not re-plead allegations against Emerman in his amended complaint. *See* Am. Compl., Doc. No. 38.

[7] Finnimore did not re-allege his Fourteenth Amendment due process claim. *See id.*

*Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## III.    Discussion

### A.    Count One: First Amendment Retaliation

"To make out a prima facie case of First Amendment retaliation, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and

the adverse action." *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022) (quoting *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003)) (cleaned up).

### 1. *Adverse Employment Action*

"[A]n adverse action" within the meaning of First Amendment retaliation "may include, among other things, discharging, . . . reprimanding an employee and . . . refusing to promote an applicant." *Heim v. Daniel*, 81 F.4th 212, 221 n.9 (2d Cir. 2023) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 401 (2d Cir. 2018)) (cleaned up). The speech must have been "at least a substantial or motivating factor in the adverse employment action." *Johnson v. Ganim*, 342 F.3d 105, 112 (2d Cir. 2003) (quoting *Sheppard v. Beerman*, 317 F.3d 351, 355 (2d Cir. 2003)) (cleaned up). "[I]n determining whether conduct amounts to an adverse employment action, the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable." *Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) (cleaned up).

The defendants took adverse employment action against Finnimore when the defendants failed to promote Finnimore, promoted Finnimore without seniority, and suspended Finnimore for five days without pay. Am. Compl., Doc. No. 38 ¶¶ 16, 26e,[8] 28h, 30g, 31e, 33, 42.

### 2. *Protected Speech*

I next evaluate whether Finnimore's speech was protected by the First Amendment. *See Shara*, 46 F.4th at 82.

---

[8] I cite to the amended complaint's second 26e paragraph.

a. Matter of Public Concern

To constitute protected speech, Finnimore's police misconduct complaints must have involved a matter of public concern. *Id.* at 84. If an employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for her discharge," and the inquiry ends there. *Connick v. Myers*, 461 U.S. 138, 146 (1983) (footnote omitted).

"[S]peech does not involve a matter of public concern when it . . . is calculated to redress personal grievances, even if it also incidentally touches on a matter of general importance." *Shara*, 46 F.4th at 85 (cleaned up). Relevant factors include "the content, form, and context of a given statement, . . . . [A] speaker's motive," and "the forum and manner in which an employee makes a statement." *Id.* at 84 (cleaned up).

i. Promotion Complaints

Finnimore's promotion complaints are not a matter of public concern. Finnimore told the Chief and Deputy Chief of Police "that he did not want to end up like Ferrara," another officer who was allegedly retaliated against for similar speech. Am. Compl., Doc. No. 38 ¶ 27a. But Ferrara's shared experience does not transform Finnimore's complaints into protected speech. "[S]peech does not involve a matter of public concern when it principally focuses on the speaker's personal issues or speech that is calculated to redress personal grievances, even if it also incidentally touches on a matter of general importance." *Shara*, 46 F.4th at 85 (quoting *Montero*, 890 F.3d at 399-400)) (cleaned up). "[L]abor versus management disputes . . . often have a strong flavor of personal grievance notwithstanding that the personal grievance is shared by numerous employees." *Id.* (quoting *Lynch v. Ackley*, 811 F.3d 569, 581 (2d Cir. 2016))) (cleaned up).

6

Although he mentioned the EHPD's alleged retaliation against Ferrara, Finnimore sought relief only for himself when he raised the promotion complaints. *See Ezekwo v. New York City Health & Hosps. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991) (public employee's complaints were not a matter of public concern because they were "generally related to her own situation . . . . [She] was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation an individual development as a doctor."). Based on the factors outlined in *Shara*, I hold that the promotion complaints did not involve a matter of public concern.

### ii.   Misconduct Complaints

Finnimore complained of a lieutenant's illicit drug use and a lieutenant's purchase and use of illicit steroids while on duty and in uniform. Am. Compl., Doc. No. 38 ¶¶ 29-29a. Finnimore also reported Officer Brockett for allegedly drinking alcohol with a minor and for breaking into his former spouse's house, seizing items, and asking a detective to halt an anticipated warrant for his arrest. *Id.* ¶¶ 24e, 26a-26b.[9]

Finnimore's misconduct complaints made in 2014, 2017, and 2019 are a matter of public concern. Police misconduct is a salient topic "of political, social, or other concern to the community. . . . [O]f general interest, or of legitimate news interest." *See Montero*, 890 F.3d at 399 (quoting *Jackler v. Byrne*, 658 F.3d 225, 236 (2d Cir. 2011), and *City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004)) (cleaned up). The complained-of police misconduct did not personally impact Finnimore.

For example, Finnimore reported a BOPC commissioner when the commissioner demanded that Finnimore and another officer unlawfully enter a residence. Am. Compl., Doc.

---

[9] I cite to the amended complaint's first 26a and 26b paragraphs. Finnimore also testified before a grand jury in 2011 regarding alleged EHPD's alleged corrupt practices, *id.* ¶ 24a, but the defendants likely did not know of that testimony's content or existence.

No. 38 ¶ 24d.  After Finnimore refused to comply, the commissioner asked a lieutenant to take his place.  *Id.*  The commissioner told the lieutenant, "keep[] making decisions like this and someday I will be putting those captain bars on you."  *Id.* (internal quotations omitted).  Finnimore's complaint about the BOPC commissioner did not appear to "primarily concern[] an issue that is personal in nature and generally related to the speaker's own situation."  *Jackler*, 658 F.3d at 236 (cleaned up).  Of note, Finnimore was an officer at the time and could not have been competing with the lieutenant for a captain position.  In his 2014, 2017, and 2019 misconduct complaints, Finnimore did not air personal grievances.  The complaints became personal *after* Finnimore's misconduct complaints impacted his career advancement.  *See id.* ¶ 27a.

> b.  Scope of Official Duties

I next evaluate whether Finnimore lodged his misconduct complaints "pursuant to official responsibilities."  *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006).  Courts consider "whether the employee 'spoke as an citizen rather than solely as an employee,'" *Shara*, 46 F.4th at 82-83, but "the lack of a citizen analogue 'is not dispositive.'"  *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 204 (2d Cir. 2010).[10]  "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."

---

[10] "A 'citizen analogue' inquiry will often replicate the private/public distinction that the Supreme Court has disavowed." *Id.* at 206 (Calabresi, J., dissenting).  The Supreme Court has oft repeated that a public employee does not need to publicly disseminate his speech to receive First Amendment protection. *Garcetti*, 547 U.S. at 420 (affirming *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410 (1979)) ("That Ceballos expressed his views inside his office, rather than publicly, is not dispositive."); *Connick*, 461 U.S. at 148 n.8 (1983) (affirming *Givhan*) ("Mrs. Givhan's right to protest racial discrimination—a matter inherently of public concern—is not forfeited by her choice of a private forum.") (citation omitted); *Givhan*, 439 U.S. at 414 ("This Court's decisions . . . do not support the conclusion that a public employee forfeits his protection against governmental abridgment of freedom of speech if he decides to express his views privately rather than publicly.").

*Lane v. Franks*, 573 U.S. 228, 240 (2014); *see also Montero*, 890 F.3d at 397-98 (2d Cir. 2018) (same); *Shara*, 46 F.4th at 83 (same).

Investigating and reporting on police misconduct likely fell outside of Finnimore's job requirements.  Finnimore held no managerial role when he raised the misconduct complaints and thus was not "expected to" report police misconduct.  *See Garcetti*, 547 U.S. at 425; *contra Ross v. Breslin*, 693 F.3d 300, 306 (2012) (plaintiff's reports of financial malfeasance was not protected speech because "her job duties included processing the payroll and making sure pay rates were correct. . . . [R]eporting pay irregularities to a supervisor was one of her job duties. She admitted that her responsibilities included reporting mistakes to supervisors.").

The amended complaint does not specify how EHPD employees may lodge complaints via internal processes, but it appears that Finnimore lodged complaints as a citizen would instead of following the EHPD's formal employee grievance procedures.  Finnimore complained about alleged misconduct within the EHPD and the BOPC to Chief Lennon, Deputy Chief Tracy, Sergeant Mulhern, and members of the BOPC, rather than to his immediate supervisor.  Am. Compl., Doc. No. 38 ¶¶ 24c-24d, 25-26.  Citizens may file complaints by emailing a Civilian Complaint Form[11] to the EHPD's "Professional Standards" division.  *Id.*  Finnimore did not contact the Professional Standards division or Sergeant Gregory Borer, the citizen office hours delegate.[12]  Nonetheless, the Chief, Deputy Chief, Captain, and BOPC Commissioner are accountable to the public and have "an open door to community comments and complaints." *Matthews v. City of New York*, 779 F.3d 167, 176; *see id.* (police officer's speech was protected

---

[11] *Civilian Complaint Form*, EAST HAVEN POLICE DEP'T, https://www.easthavenpolice.com/records-division/page/civilian-complaint-form-forma-de-querella-civil (last visited Sept. 26, 2024).  I take judicial notice of the civilian complaint form's existence, which "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

[12] *Professional Standards Division*, EAST HAVEN POLICE DEP'T, https://www.easthavenpolice.com/professional-standards-division (last visited Sept. 26, 2024).

when he "did not follow internal grievance procedures, but rather went directly to the Precinct

commanders . . . . Matthews chose a path that was available to ordinary citizens who are

regularly provided the opportunity to raise issues with the Precinct commanders.").

"[T]he inquiry into whether speech was made pursuant to an employee's official duties is

a practical one." *Ross*, 693 F.3d at 306 (quoting *Weintraub*, 593 F.3d at 203) (cleaned up).

Based on the allegations of the amended complaint, I conclude that Finnimore's misconduct

complaints were not made within the course of his official duties as a police officer for the

EHPD.

### c. *Pickering* Balancing

Third, I consider "whether the employer's reaction to that speech was nonetheless

justified, balancing the employee's interest 'in commenting upon matters of public concern'

against the public employer's interest in 'promoting the efficiency of the public services it

performs through its employees.'" *Heim*, 81 F.4th at 224 (quoting *Pickering v. Bd. of Educ. of

Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)) (cleaned up).  Legitimate

interests on the employer's side include "promoting efficiency and integrity in the discharge of

official duties and maintaining proper discipline in public service." *Lane*, 573 U.S. at 242

(quoting *Connick*, 461 U.S. at 150-51) (cleaned up).

The defendants claim that Finnimore engaged in "unprofessional behavior at [a] public

meeting" in January 2021 after he first learned that he would not be promoted to Lieutenant.

Doc. No. 44 at 16.  Without more, the defendants fail to justify the two retaliatory events

occurring before Finnimore's apparent "unprofessional behavior" in January 2021.  Am. Compl.,

Doc. No. 38 ¶¶ 26b, 26e,[13] 28d, 28h (promotional interviews and subsequent failures to promote occurring in September 2019 and January 2020). *Pickering* therefore tips in Finnimore's favor.

   3. *Causation*

To prove causation, "a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action. . . . [E]ither directly through a showing of retaliatory animus, or indirectly through a showing that the protected activity was followed closely by the adverse action." *Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) (quoting *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006), and citing *Cobb v. Pozzi*, 363 F.3d 89, 108 (2d Cir. 2004)) (cleaned up).

Finnimore alleges that his protected speech was "close in time" to the promotion denials. *See Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009). "Our Circuit has declined to draw a bright line as to how close in time" the protected speech and adverse employment action "must be. We have instead called on courts to exercise judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (quoting *Espinal*, 558 F.3d at 129) (cleaned up).

For the purpose of temporal proximity, I measure the time from Finnimore's most recent misconduct complaint—September 25, 2019—to each promotion denial. The September 30, 2019 promotion denial occurred five days after Finnimore's misconduct complaint. *See id.* ¶¶ 26b,[14] 27a. The January 3, 2020 promotion denial occurred three months after the misconduct complaint. *See id.* ¶¶ 26b, 28g-28h. The January 19, 2021 promotion denial occurred fifteen months after the misconduct complaint. *See id.* ¶¶ 26b, 30e, 30*l* (citation emphasis added).

---

[13] I cite to the amended complaint's second 26b and 26e paragraphs.
[14] For the purposes of this section, I cite to the amended complaint's first 26b paragraph.

A five-month delay is a sufficient prima facie showing of causation.  *Kiernan v. Town of Southampton*, 734 F. App'x 37, 43 (2d Cir. 2018) (citing *Cioffi*, 444 F.3d at 168).  Approximately one year may be sufficient if a plaintiff shows both "direct and indirect evidence of a causal connection between protected activity and retaliation."  *DeCintio v. Westchester Cnty. Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987).  The fifteen months from Finnimore's protected speech to his January 19, 2021 promotion denial is a longer delay than the case law often recognizes.  But fifteen months is sufficiently proximate for two reasons.

First, the relevant temporal period extends longer for failure to promote cases than for termination cases.  "It makes logical sense that if an employer wishes to retaliate by firing an employee, he is likely to do so soon after the event.  In a failure to promote case, however, the opportunities for retaliation do not necessarily immediately present themselves."  *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 384 (2d Cir. 2003).

Second, Finnimore provides some direct evidence of retaliatory animus, suggesting that his earlier speech may have had "a lasting effect on [his] career."  *See id.*  On January 2, 2020, the defendants "hectored [Finnimore] with questions about . . . his reporting Brockett, and other officer's criminal misconduct."  Am. Compl., Doc. No. 38 ¶ 28g.  On January 19, 2021, the defendants questioned Finnimore "regarding his prior speech regarding Brockett [and] Murgo."  *Id.* ¶¶ 30e-30f (cleaned up).  On September 15, 2022, the defendants "harassed" and "questioned" Finnimore "about his complaints regarding corrupt officers."  *Id.* ¶¶ 31b-31c.  Those inquiries extend the relevant temporal period.  *See Mandell*, 316 F.3d at 384 (ten-year delay did not foreclose the plaintiff's First Amendment retaliation claim when the defendants' reference to earlier protected speech "indicates that plaintiff's criticism of the Suffolk County Police may have had a lasting effect on plaintiff's career.").  I therefore determine that the

September 30, 2019, January 2, 2020, and January 19, 2021 promotion denials are sufficiently proximate to Finnimore's protected speech to support an inference of causation.[15]

 The other alleged adverse actions are too remote to support an inference of causation.  I again measure the time from Finnimore's most recent misconduct complaint to the internal investigation, the five-day suspension, and the September 15, 2022 promotion denial.  The misconduct complaint occurred approximately 1 year and 4 months before the investigation; 1 year and 7 months before the suspension; and almost three years before the September 15, 2022 promotion denial.  *See* Am. Compl., Doc. No. 38 ¶¶ 26b, 31a, 31e, 33, 42.  Those delays are too long to support an inference of causation.  Furthermore, the internal investigation and five-day suspension are not linked to Finnimore's protected speech because the defendants did not question or investigate Finnimore about the misconduct complaints.  *See id.* ¶¶ 33-34, 36-39, 42. It appears that the defendants initiated the investigation, suspended Finnimore, and denied Finnimore a promotion on September 15, 2022 because of the promotion complaints.

* * *

Finnimore has plausibly alleged a First Amendment retaliation claim for his misconduct complaints, but not for his promotion complaints.  Count One may therefore proceed.

B. Count Two: Fourteenth Amendment Equal Protection Clause

1. *Constitutional Rights-Based Selective Enforcement*

Finnimore brings a constitutional rights-based selective enforcement claim.[16]  "A plaintiff can prove a selective enforcement claim by showing (1) that they were treated

---

[15] I decline to decide whether Finnimore's direct evidence of retaliatory animus is alone sufficient to allege causation.  *See Kiernan*, 734 F. App'x at 43 (2d Cir. 2018) ("We need not decide whether this direct evidence of retaliatory motive would alone suffice" because temporal proximity supported an inference of causation).
[16] I evaluate Finnimore's selective enforcement claim based only on his constitutionally protected activity, not the defendants' alleged malice, which might support a class-of-one claim.  The Second Circuit has "not decided whether

differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights[.]" *Eldars v. State Univ. of N.Y. at Albany*, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001)) (cleaned up).

First, Finnimore was similarly situated to the comparators. "[T]he plaintiff's and comparator's circumstances must bear a reasonably close resemblance . . . . in all material respects." *Hu*, 927 F.3d at 96 (quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). "They need not, however, be identical." *Id.* Three individuals in the EHPD were promoted before Finnimore: Sergeant Brockett, Lieutenant Bissett, and Lieutenant Brochu (the "comparators"). Am. Compl., Doc. No. 38 at ¶¶ 72-74. The comparators interviewed for lieutenant positions at the same time as Finnimore. *See id.* ¶ 26a,[17] 30g. They took the same written and oral examinations. *See id.* ¶ 21.

Second, Finnimore was treated differently than the comparators. The first time he sought promotion to sergeant, Finnimore scored highest on the written and oral examinations and ranked first on the promotion list. *Id.* ¶ 26c.[18] Officer Finoia ranked second but was promoted ahead of Finnimore. *Id.* ¶ 26d.[19] The second time he sought promotion to sergeant, Finnimore ranked

---

the Supreme Court's decision in *Engquist* to bar *Olech* [class-of-one] claims in the employment context also applies to malice-based *LeClair* claims." *Hu v. City of N.Y.*, 927 F.3d 81, 100 n.5 (2d Cir. 2019). "Meanwhile, district courts within the Second Circuit are divided." *Ramirez v. Town of Oxford*, 2022 WL 3646203, at *8 (D. Conn. Aug. 24, 2022); *Compare id.* (noting the split across district courts and concluding that *Engquist*'s holding precludes malice-based equal protection claims in the public employment context) *with Jones v. Sansom*, 2023 WL 1069487, at *20 (D. Conn. Jan. 27, 2023) ("[The plaintiff's] race-based and malice-based selective enforcement claims are not categorically barred by *Enquist*" because the Second Circuit left "an open question about the effect of *Engquist*" when a "plaintiff raise[s] both race and malice-based selective enforcement claims."). Because Finnimore also brings a constitutional rights-based selective enforcement claim, I decline to delve into the unsettled landscape of malice-based claims.

[17] I cite to the amended complaint's second 26a paragraph.

[18] I cite to the amended complaint's second 26c paragraph.

[19] I cite to the amended complaint's second 26d paragraph.

first on the promotion list.  *Id.* ¶ 28e.  Brockett ranked fourth but was promoted ahead of

Finnimore.  *Id.* ¶¶ 28ε, 28h.  The first time he sought promotion to lieutenant, Finnimore scored

the highest on written and oral examinations and ranked first on the promotion list.  *Id.* ¶ 30a.

Officer Bissett ranked second and Officer Brochu ranked third on the promotion list.  *Id.* ¶ 30c.

Bissett had two and one-half years less experience as an officer than Finnimore and had recently

been suspended without pay due to a domestic violence-related arrest.  *Id.* ¶ 30h.  The defendants

promoted both officers ahead of Finnimore.  *Id.* ¶¶ 30h-30i.  The second time he sought

promotion to lieutenant, Finnimore ranked first on the promotion list.  *Id.* ¶ 31d.  Officers Finoia

ranked fourth, but the defendants promoted him ahead of Finnimore.  *Id.* ¶¶ 31d-31e.

Third, the defendants' actions were plausibly due to "intent to inhibit or punish the

exercise of constitutional rights" at least with respect to Finnimore's two denials of promotion to

sergeant and first denial of promotion to lieutenant.  *See Eldars*, 2021 WL 4699221, at *3.

During those interviews, the defendants questioned Finnimore about his police misconduct

complaints.[20]  Am. Compl., Doc. No. 38 ¶¶ 28g, 30f.

Finnmore therefore plausibly alleges a Fourteenth Amendment selective enforcement

claim.

C.  <u>Count Three: Municipal Liability (First and Fourteenth Amendment)</u>

Finnimore brings his *Monell* municipal liability claim against Chief of Police Lennon and

the Town of East Haven.  Municipal liability under section 1983 attaches upon the

municipality's violation of a "federally protected right through (1) municipal policy, (2)

municipal custom or practice, or (3) the decision of a municipal policymaker with final

---

[20] In later interviews, Finnimore only alleges that the defendants questioned him about his unprotected speech regarding "corruption" complaints.  *Id.* ¶¶ 30f, 31b.

policymaking authority." *Zherka v. DiFiore*, 412 F. App'x 345, 348 (2d Cir. 2011) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  *Monell* exacts a demanding standard.  The municipality must take "deliberate action" so that "the municipality itself is the moving force behind the plaintiff's deprivation of federal rights."  *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (cleaned up).

Finnimore's allegations of custom or practice are conclusory, contain no factual allegations, and are insufficient to survive a motion to dismiss.  *See Guillette v. Burlington Police Dep't*, 2022 WL 2208122, at *1 (2d Cir. June 21, 2022) ("A general and conclusory allegation of a municipal policy or custom, . . . fails to state a plausible claim.") (cleaned up).

Regarding municipal policymakers, liability only attaches to those who "possess[] final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  I look to the Town of East Haven's Charter to determine if Lennon and the BOPC are final policymakers.  *See id.* at 482 ([W]hether an official had final policymaking authority is a question of state law.").

The Charter grants the BOPC final policy making authority regarding officer hiring and promotion.  Town of East Haven Charter, Ch. 1 § 7(A) ("The Board of Police Commissioners shall appoint and may remove, subject to such rules and regulations as may be adopted pursuant to the merit system . . . all Officers and Employees in the Police Department excepting the Police Chief.").[21]  Regarding Lennon, the Charter grants the Chief of Police the authority and duty to "*assign* all members of the department to their respective posts, shifts, details and duties."  *Id.*

---

[21] I take judicial notice of the Town of East Haven's Charter.  *Fair v. Esserman*, 2015 WL 7451154, at *3 (D. Conn. Nov. 23, 2015) (taking judicial notice of New Haven's City Charter).

§ 7(C) (emphasis added).  Lennon lacks the authority to promote or hire officers, but the BOPC consults with Lennon when deciding whom to promote.  *See* Am. Compl., Doc. No. 38 ¶ 26b.[22]

Lennon and the BOPC are final policymakers regarding officer promotion.  Accordingly, I deny the Town of East Haven and Lennon's motion to dismiss Count Three.  *See Fair v. Esserman*, 2015 WL 7451154, at *2-*3 (D. Conn. Nov. 23, 2015) (permitting a complaint alleging that the defendant "is the chief of police" to proceed because, "assuming at this stage of the proceedings that [the defendant] is a final policy-maker, his personal actions to remove [the plaintiff] from a public meeting would not present any questions of fault or causation.").

D.   Count Four: Conn. Gen. Stat. § 31-51q et seq.

Finnimore brings a state whistleblower claim against the Town of East Haven.[23] Connecticut's employee whistleblower statute applies to "any employer, including the state and any instrumentality or political subdivision thereof, who subjects or threatens to subject any employee to *discipline* or discharge on account of (1) the exercise by such employee of" free speech rights.  Conn. Gen. Stat. § 31-51q(b) (emphasis added).  Employers who violate the statute are "liable to such employee for damages caused by such discipline or discharge, including punitive damages, . . . ."  *Id.*

1.  *Discipline*

"The word 'discipline' is not statutorily defined."  *Bombalicki v. Pastore*, 2000 WL 726839, at *3 (Super. Ct. May 10, 2000).  "The proper interpretation of section 31-51q is a question of state law, but the Connecticut Supreme Court (and appellate courts) have so far been

---

[22] I cite to the amended complaint's second 26b paragraph.
[23] During the July 30, 2024 hearing on the instant motions, Finnimore withdrew his state whistleblower claim against the individually named defendants.

silent on the definition of . . . 'discipline.' Most courts begin their analysis with *Bombalicki*."

*Brown v. Office of the State Comptroller*, 456 F. Supp. 3d 370, 412 (D. Conn. 2020).

Under *Bombalicki*, "[a] withholding of a benefit—even a benefit that was due or

promised—does not fit" within the ordinary meaning of "discipline." *Bombalicki*, 2000 WL

726839, at *3. "'Discipline' is an affirmative act of deprivation that diminishes the status or

happiness of the recipient rather than a failure to enhance that status or happiness." *Id.*; *see also*

*McIntyre v. Fairfield Univ.*, 2003 WL 1090690, at *1 (Super. Ct. Mar. 3, 2003) (following

*Bombalicki* and concluding that "the denial of the plaintiff's application for tenure and promotion

and the renewal of her contract" was not "discipline"). Finnimore does not satisfy the

*Bombalicki* standard because his retaliation claims extend only to the defendants' promotion

denials, not the "sham" investigation and subsequent five-day suspension. *See supra* Causation,

Section A.3.

Connecticut state courts, however, "do not adopt a uniform definition of what 'discipline'

means under §31-51q." *Browne v. Conn. Dep't of Corr.*, 2017 WL 524385465, at *2-*3 (Super.

Ct. Sept. 27, 2017) (collecting cases). Other judges interpret "discipline" more broadly than the

*Bombalicki* court:

> [A]n important recent decision authored by now-Justice Steven D. Ecker . . . . noted that
> it is unclear why Connecticut would adopt a less protective statutory standard than that
> developed by federal courts in First Amendment retaliation cases. . . . any rule which falls
> short of it will necessarily permit employers to engage in some retaliatory actions that are
> sufficient to dissuade a reasonable employee from exercising her constitutional speech
> rights.

*Brown v. Office of the State Comptroller*, 456 F. Supp. 3d 370, 412 (D. Conn. 2020) (citing

*Browne v. Conn. Dep't of Corr.*, 2017 WL 524385465, at *3 (Super. Ct. Sept. 27, 2017) (Ecker,

J.)) (cleaned up); *see also id.* at 402 ("I have already held—and the Second Circuit specifically

affirmed—that the loss of such benefits and concomitant prevention of being eligible for a

promotion was 'discipline' within the meaning of Conn. Gen. Stat. § 31-51q."). "[I]t would be far too easy for an employer to evade the statutory prohibition" through means "that everyone on the inside knows are punitive in nature. In light of the statute's purpose to safeguard fundamental constitutional rights, an employer should not be allowed to penalize an employee's exercise of those rights by inflicting pain without leaving marks." *Browne*, 2017 WL 5243854, at *4. I followed Justice Ecker's reasoning when deciding *Brown v. Office of the Comptroller* and do the same here.[24] Finnimore was "disciplined" within the meaning of section 31-51q when the defendants refused to promote him because of his protected First Amendment speech.

### 2. *Exercising Free Speech Rights*

Finnimore may only invoke Connecticut's statutory whistleblower protections if he was exercising:

> [R]ights guaranteed by the first amendment to the United States Constitution or section 3, 4, or 14 of article first of the Constitution of the state, provided such activity does not substantially or materially interfere with the employee's bona fide job performance or the working relationship between the employee and the employer[.]

Conn. Gen. Stat. § 31-51q(b) (emphasis added).

To determine if a public or private employee has engaged in protected speech within the meaning of Section 31-51q, Connecticut courts follow "Justice Souter's modified *Pickering/Connick* balancing test." *Trusz v. UBS Realty Inv'rs, LLC*, 319 Conn. 175, 205, 210-12 (2015) (discussing *Garcetti*, 547 U.S. at 434-35 (Souter, J., dissenting)). If "an employee is speaking pursuant to official job duties," his speech is protected if he "comment[s] on official dishonesty, deliberately unconstitutional action, other serious wrongdoing, or threats to health and safety." *Id.* at 204 (cleaned up).

---

[24] In *Brown v. Office of the Comptroller*, I also determined that the plaintiff satisfied the more-stringent *Bombalicki* standard. 456 F. Supp. 3d at 412-13.

Regarding his misconduct complaints, Finnimore was not speaking pursuant to his official job duties. *See supra* Section III.A.2.b. Finnimore satisfies both the *Garcetti* categorical rule and the *Pickering* balancing test. *See supra* Section III.A.2. The misconduct complaints may proceed under *Connick* because they are a matter of public concern. *See supra* Section III.A.2.a.ii.; *Connick*, 461 U.S. at 146 (if an employee's "speech cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for her discharge."). Finnimore's promotion complaints, however, are barred by *Connick* because they are not a matter of public concern. *See supra* Section III.A.2.a.i.

Count Four may proceed against the Town of East Haven to the extent it applies to Finnimore's misconduct complaints.

## IV.    Conclusion

Based on the foregoing, I **deny** in substantial part the defendants' motions to dismiss, **docs. no. 43, 45**. I **grant** the motions to the extent that they apply to Finnimore's promotion complaints.

So ordered.

Dated at Bridgeport, Connecticut, this 26th day of September 2024.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge